Carol is here for the appellant, Harris-Solomon is here for the appellee. Ms. Carol, you may begin. Good morning, I'm Jennifer Carol here on behalf of the plaintiff Jane Doe in this case and I'm sure the court has read all the briefs and the record and without question this is an unusual case certainly on the facts but they're important and in summary in 1993 Jane Doe and John Roe the defendant started a nine-year serious relationship in New York. John Roe is a very high profile businessman well known throughout the world and Jane Doe is a well-known Swedish actress. This relationship continued for nine years all the while John Roe was married to someone else and had a family, children with that wife and on August 18, 2002 Jane Doe gave birth to their child, we call her Child X. This was a nine-year relationship, plaintiff has testified they're very much in love, the child comes along, John Roe becomes a totally different person. He cannot have anybody know about this child born out of wedlock, he insists on keeping his secret to everybody even to the child herself. Well, let's see now, we are aware of the background facts and so I mean one of the issues is whether the statute of fraud bars the enforceability of the oral contract but let's dispense with the unjust enrichment claim first. I think you might have a stronger argument on the statute of frauds with regard to the breach of the contract. With regard to unjust enrichment, that's an extraordinary remedy and so there has to be an inequity to correct. There's no inequity to correct here if she divulged the secret to 11 lawyers and her friend Jeremy Rind while John Doe supported plaintiff and her daughter paying more than $110,000 in child support. So there's no unjust enrichment here. Well, your honor, with respect to disclosure, any disclosure and I think we set this out in the brief, these were only to people who either had, they were bound by confidentiality for therapists for example. I believe when Rind, that was after litigation had been filed. So to say that because there was disclosure to many lawyers in the litigation, I believe is a disingenuous argument. What about Jeremy Rind? Did you need to tell him? No, I'm sorry. I believe that was after she had filed her lawsuit originally, your honor. And so after the civil lawsuit. So I believe that was right after that. I think I laid that out in the brief, your honor, as far as the timing and the sites on that. So when it comes to that, no, she did not go and disclose. And for all these years, and certainly prior to the litigation and even during, with the exception of what's laid out to lawyers, to her friend and to her therapist, she maintained this confidentiality. And it wasn't an easy task. I mean, she can't her daughter who her father is. She can't discuss in social settings, anything about the father. Is your point basically that whoever she might've disclosed it to, she chose who she was going to disclose to in such a way as to ensure that the wife didn't find out? Is that basically what your point is? Well, I think that's, that would be one point, but I think she was very careful not to for example, the plaintiff Jane Doe had planned to write a book and she, a book would be of interest to her followers. But she did not, she held off doing that book. And she had wanted to go into that and discuss her nine-year relationship. And she did not. And that would have been a way for her to get funds to help raise her child and with these expenses, but she held off. And I think that, I think even Judge Rodriguez recognized this in, when he denied the motion to dismiss and said, no, those are damages. And that's something that is legitimate, that she can put that before a jury and decide, but there's no evidence. And I actually think that's a jury issue also. Did she breach the agreement? And I think that's definitely a fact question, but I think the evidence is, you know, our position is she did not breach it. Especially to be talking to lawyers with litigation about the civil suit. So that was a, she held up her end of the bargain. Okay. And, you know, when you talk about, you know, is there an inequity here? Again, and that's why I wanted to talk a little bit about the facts, but I'll just get right to the point. It's an unusual situation. Okay. But you have two adults. This woman had not, again, the evidence is a nine-year relationship. She knows that this father is not going to want to have a father in her life. Okay. So she wanted to do what was best, what she thought in her mind would be best for her child. So she thought, well, her child, their child, Mr. Rowe's child, as well, should be treated the same as his other children. She should be receiving inheritance, receive a good education, receive a very good life. So that's why they made this arrangement. I mean, he was putting pressure on her, intimidating her, threatening her, I have the means, you know, to destroy you, all this. And they came to an agreement and she had a right to make that agreement. So your argument on the breaching contract is that it's possible that the obligations could be performed within a year? Well, yes, and I believe so, because it's the creation of the trust. And even Judge Rodriguez recognized this when he denied the obligation to dismiss on that ground, because you just have to create the trust, okay? So that could be accomplished within the year and you can lay out the terms of that. So I think, you know, under any law, whatever state you follow, I think it falls outside the statute of frauds. Can I ask you a question about that? Yeah. Specifically, under New York law, New York law statute of frauds, I thought was interesting and says, as an exclusion, by its terms is not to be performed within one year from the making thereof, which you just discussed, or the performance of which is not to be completed before the end of a lifetime. And so the reason that I find that interesting is, in the plain language of that, it would seem like this would be subject to the statute of frauds under the second half of this. In other words, there's no way that Jane Doe could complete this before she dies. And the reason for that would be that she has to have no disclosure throughout the entirety of her life. So the only way we can know that this is completed without being breached is that she dies, having kept the disclosure the entire time. So, I mean, why isn't that the case? Why isn't under New York law, this not, why is this not within the statute of frauds? Well, I actually go back to what Judge Rodriguez said in his order. I think that's maybe, well, I don't know if he was thinking New York law, of course, at that time. But I believe that's can die within a year, right? Because remember New York law. Well, even if plaintiff, so I agree with you that year by its terms not to be performed within one year from the making thereof, this could be performed within a year because you're right, she could die. So I totally agree with you that under the statute of frauds, it seems like this would be accepted under that half of it. The problem, which seems to me to be independent of that part of the New York statute, is the part that follows the word or, which says the performance of which is not to be completed before the end of a lifetime. So here, let's say she lives for 50 years and never discloses it. Well, we can't know during any point in that 50 years that she has completely, that she has completed her obligation because she can't, by the terms of the agreement, complete it. That is, she can't go through life without disclosing it until she's died. So, but maybe I'm missing something. That's what I'm trying to ask you to address. Why is it not the case that this falls within the statute of frauds under New York law, under the second half of the New York exception? Yes, under that rationale. So really you're saying under that second half, it's really an Do you know what I'm saying? It's almost like an impossibility, but I do note the disjunctive word there, or, okay, or, and I think as long as she fulfills one of those under the New York law, it falls under that. Okay, but I don't think on the second one, I just, I don't, I don't, I think that's an impossibility. Is there a true conflict between Florida and New York law? You know, on the basic statute of frauds, I don't think there is, especially within the year, and I want to refer you, there's a great opinion by Judge Mora. I was studying that last night, the Hayes case, where he analyzes a lot of this. But the difference, and really the only difference on the one year, and I know there, there's a couple things. New York law has those cases, you know, no matter how improbable, but again, I see Florida cases that say it actually has to be impossible to accomplish within the year. But New York law, there's other New York law in cases that talks about these hush, these secret agreements, and it says, you know, those are exempt from the statute of fraud. So that, that's the difference that I saw, and I see my time is up. All right, you reserved some time. I have reserved for rebuttal, Your Honor, yes. Thank you. We'll hear from Mr. Solomon, and I'm going to ask counsel to keep their seats during the argument. Yes, that's, that's what I mean, thanks. Okay. May it please the court, Harris Solomon on behalf of Appalachian Row, and I would note for the court that the child ex is here in the courtroom. She's apparently sitting with her mother. So the question of, has the secret been kept? No. You know, Judge Rosenbaum, you asked about, was it, was the secret really not to tell the wife? The plaintiff told the wife. That's in the record. Plaintiff went to the wife's house and told her in person. The plaintiff told the wife. That's in the record. the breach of contract claim, and why the court did not even cite Browning versus Poirier, the Florida Supreme Court decision, the second time around, because that case controls. Statute of fraud only bars the enforceability of oral contracts not capable of being performed within a year of the date the parties allegedly entered into the contract. That's the law. That we apply, right? Your Honor, there's, there are all sorts of cases that deal with the issue of the contract under Florida law. Isn't Browning right on, I mean, that's, that's Florida law that we apply, right? Browning doesn't control that under these facts, where something is going to be done in perpetuity, you can't do it within one year. If you take Judge Rosenbaum's question about, you know, the mother could have died, the same would be true then for every case. I don't think it necessarily would be true for every case. I mean, you could have a situation where, you know, you could say that within the next 30 years, we're going to make some agreement that's going to happen. And, you know, that's a situation that, that, you know, it's determined that 30 years must go by, or whatever the case may be. So you take a case that says, I'm going to do this, and we're going to do it for five years, me and you, we could both die, and therefore you can't do it. The corporation stops existing. Except you could, you could put a deadline, right? You could say, I want you to write a book for me, but you've got to do it within, you've got to do it within two years from now. It's got to be done within two years from now. That's a contract that can't be accomplished, or that, I mean, I guess it could be accomplished. That's correct. Under that scenario, your honor, there's nothing that couldn't be accomplished. If, if the contemplation is that everyone can die, and that every corporation can die. That's a different hypothetical here. She promised to take the secret to her grave, right? She, no, she promised that she would, that she would never, well, first, my client disputes that there was any such agreement, so that it's clear, none of the facts. If she promised to take the secret to her grave, it's possible that she could die within a year. It's not, it's unlikely, but the, the law is that if it's possible, then it's outside of the statute of frauds, even if it's unlikely. Isn't that the law? It is not the law for something that is going to go on forever, or going to go on for some specific number of years, even though everybody could die before it could happen. Every corporation could be dissolved before a year is up. The state of if that's the take that you accept the, the law, then there is no statute of frauds anymore, because no contract has to take more than a year. Ukraine could be taken up by the Soviet Union. There won't be any more country of Ukraine. There won't be a human being. There won't be a corporation. That's not the statute. You, that, that description of what the statute would have to mean, if everybody could just die or go away, or be dissolved, means there would never be an to anything. And, and we've eliminated the statute of frauds. Contrary to that, the law is the statute of frauds is supposed to be strictly construed. It's supposed to be enforced. It is to eliminate exactly what's happened in this case. I have a question for you. How do you reconcile the district court's motion to dismiss ruling, finding that the oral agreement or the alleged oral agreement could be performed within a year with a summary judgment ruling in which it concludes the exact opposite? I thought the district court's motion to dismiss ruling was wrong. And, and I think the court came to realize that it's ruling was wrong. Do you have any case that holds in a situation like this one, that, that a contract cannot be, does not, I guess, does fall within the statute of frauds, because it, it's not enough that it's possible that it can be performed within one year? Yes. The All Brands Importers versus Tampa Crown Distributors case interpreted the Florida statute of frauds and said there is a question of whether it's intended by the parties to last longer than a year. Except that's where you get into the Browning problem, because Browning very clearly, it seemed to me, discounts intent. And so, and, and that's, that's the whole issue, right? And so I bring, it brings me back to what Judge Wilson was asking you about. What about Browning? How do you deal with Browning? You, you have to deal with Browning by, by not making the world all end. And if you just don't make the world all end, then everything that is going to take place over a period of years is, will take place over the period of years. So if something says, you're going to do this for the rest of your life, you're going to take this action and, and you have a right to sell this, you know, for all time, but you take the position that, well, then you're going to, the corporation could be dissolved in a year. So the fact that it could be for all time isn't in perpetuity. So yeah, there are cases, for example, the Eclipse medical case. Is that before or after Browning? And does it rely on intent? It doesn't rely, it doesn't rely on intent. Let me, let me look at my list of other, uh, the, um, that's a New York case, um, uh, the hospital corporation of America versus associates case doesn't rely on intent. It was a contract that was going to run for 15 years. Um, it's a 605 Southern Second 556, which we do cite to the court, I believe. Um, Is that before or after Browning? It's before Browning, but it doesn't rely on intent. It merely says, uh, this contract is to go for 15 years. We apply the statute of frauds to it. Um, not because the party's intended, but because it was supposed this contract is going to run for 15 years. If you take the person could die, the corporation could terminate. So there's no difference between a person dying and a corporation being dissolved. And if that resolves every statute of frauds issue, then everybody could die within a year. Every corporation could dissolve within a year. Every political jurisdiction could be eliminated by the state of Florida within a year. So there would be no contract that ever fell within the statute of frauds. It's not different if she says, well, I'm going to take this secret to my grave. Okay. So that, so the answer to that is that's something that is intended by the parties to be done until the person dies. And there isn't a reasonable contemplation that everyone is going to die within a year because, but so, so I don't believe that that would, would be outside of the statute of frauds. Um, but certainly where somebody says, I'm going to keep it secret forever. You are the child's father. Um, didn't say it ended up upon her death. Isn't it, isn't there a difference because in Browning, the court said when there's, when no definite time is fixed by the parties for the performance of the agreement, and there's nothing in the terms to show it couldn't be performed within a year, then it shouldn't be construed as being within the statute of fraud. So you have to have two things. The first thing you have to have is the one we've all been talking about, or actually it's the second thing, which is that it, it, um, there's nothing that says that it can't be performed within a year, right? That's what we've been talking about. But the first thing that you have to have by Browning's terms is no definite time is fixed by the parties for the performance of their agreement. And so that's why the situation where there's a 15 year term for the, uh, for a contract would not fall within the statute of frauds under Florida law under Browning. I mean, why is that not the case? Okay. So, so, uh, so if we've decided we're only applying Florida law because under New York law, Bent had a, I'm not saying one way or the other, but, but this is the issue that you all raised. And as far as I understand it, Mr. Uh, Mr. Rowe is relying on Florida law. So we believe Florida law is the appropriate law to apply. But if we, if plaintiff is contending New York law, uh, under Ben versus St. John's under New York law, clearly anything that's done in perpetuity without an end date, uh, is, is covered. Uh, and we cite, uh, 189, uh, CD third, nine 73 to 220 under Florida law. Um, there is nothing in Browning that would contemplate that everybody is going to die and every company is going to be dissolved within a year. And I just don't think that was the Supreme Court's contemplation when they're saying, you know, if there's nothing definite, I'm going to keep this secret forever because there's nothing in the plaintiff's statement of what her secret is that the secret is going to be kept only until her death. If the plaintiff reveals the secret upon her death, she's breached. If she writes a book and has a note and it gets disclosed afterwards, she's breached it. So that's her allegation. Again, Mr. Rowe contends that there's no such agreement, but, but her allegation is that she's going to keep this secret, not till her death, but keep it secret. It is a in perpetuity obligation. She couldn't go commit suicide tomorrow and say, okay, I've committed suicide. So now I, my book can come out and I can reveal it under her own allegation. She just can never reveal it, whether she reveals it during her lifetime or some through some method after her lifetime. The, this agreement is supposed to be forever. She didn't keep any of the agreement. And as your honors have have seen, uh, she not only told lawyers and the plaintiff wants to have that both ways. They want to say that all of these things that happened for years from the, before the child was even born, as a court will remember, Mr. Rowe didn't even learn that his, that the plaintiff was pregnant with a child until after the child was born. She didn't tell him that he didn't know anything about that until she invited her over to the house one day and saw the child. Um, and she didn't tell him why she was going to the house. She encouraged him to go after they had no relationship. She acknowledges in the record that she had no relationship with him at all from her pregnancy through the time this child was born. Um, and, but kind of come over to the house and introduces him to the child. So we have a situation that is exactly what the statute of frauds is designed to prevent. In the DK Arena case, the court stated the purpose of the statute of frauds is to intercept the frequency and the plaintiff in her, um, in her brief to this court recites an email that she sent, went through her lawyer to counsel for Mr. Rowe back in 2014. And all of those things, all those lawyers weren't involved in the lawsuit about this enforcement of this agreement. They were all involved in other things. So we have, uh, the plaintiff coming in and saying, um, in that email, uh, we don't have an agreement. I know you've, you've promised to give our daughter an inheritance one day, uh, and you haven't done it yet. There's nothing in those writings. There's not, there's not one writing. She recorded 48 phone calls, not one recorded phone call of these secretly recorded phone calls where anybody over a period of 15 years prior to filing this lawsuit ever said one thing about this agreement. Nobody ever mentions, she talks to him all the time about money, talks to him all the time about giving her more money. They go to court in 2009 where her lawyer says to the court, uh, judge, the, Mr. Rowe is a man of honor. We, we know he'll keep doing that, which he has been doing nothing about. He isn't doing what he's supposed to be doing. There's never an allegation of any of that until 2017. And when she says she didn't tell Mr. Wren until after the lawsuit was filed, that's not true. Uh, in fact, if you read the order on a motion for sanctions, you'll see that the magistrate judge, in fact, found based on the testimony of the plaintiff that she had told Mr. Wren prior to the filing she told him in August of 17, she filed her lawsuit in September of 17. So before you, before you finish and, and, um, I just want to ask you what's in the supplemental appendix. So there are three things in the supplemental appendix. Uh, one is a, a, uh, document that is the jury instructions. Every, they were agreed. Every jury instruction is under Florida law. Uh, one is, uh, the joint pre-trial stipulation, which says that Florida law will apply to all counts in this matter. And one is, uh, an exhibit to the joint pre-trial stip, which is an exhibit list of the plaintiff, which says, uh, references, what things are gonna be possibly shown to the court. And one of them was Florida statutes, uh, no mention of New York law in any of those things. Can, can those things override Florida law, the Lex Losey law, you know, that, that the location of the last, when we're talking about a contract, that the location of the last act governs where the contract was entered into and therefore the governing law. So, uh, yes, I think anybody can agree to, uh, you know, what a choice of law is a decision. And so they can agree to it. That's true. They can agree to it in the contract. You're saying they agreed to it in this litigation. Okay. So, so not only did they put it in the very complaint, paragraph five of the very complaint that we're talking about says all these, all actions are governed by Florida statute in the, in the complaint, um, that, that paragraph is realleged in every count. Then that's not necessarily an agreement though. I mean, I understand you're saying that you agree with it, but then, then in the joint pretrial step, all, all counts are, are under Florida law. And then in the pretrial, and then in the jury instructions that were submitted jointly by the parties, all jury instructions were merely Florida law. We have to decide whether to grant or deny your motion for leave to file a supplemental appendix. Do you have an explanation for its late filing? It has to be filed within seven days. I think our rules provide then seven days of the filing of your brief. Uh, it wasn't until after we had responded to the initial brief and said that, you know, the parties had, they had waived this issue and agreed to Florida law. Uh, it wasn't until after their reply brief where they said, no, they hadn't. And then in preparation for being here today, we went back and looked through the record again and said, is there, and saw these documents. And so we brought them to the court's attention when we became aware that they, uh, contradicted the position of the plaintiff. All right. So just to be clear, I'm sorry. Thank you. Um, just to be clear, your position is that Florida law governs this and so you're not, you're not holding onto the second part of the statute of frauds explanation or exception in New York law that I mentioned in the first part of this argument. We believe that under New York law, every count is also, as the court found, also dismissible. And for the same reasons under New York law, um, you know, things that are supposed to happen in also dismissible under New York law. All right. Thank you. All right. Thank you. Mr. Ms. Carol. All right. First of all, uh, Mr. Rose counsel tells his court that, uh, denies that there was any agreement and there was no, no evidence. I believe I put this in my brief, but, uh, first of all, Dr. Rider provided an affidavit where he overheard the terms of the agreement discussed and, you know, payments, uh, to Ms. Roe, keeping Mr. Rose counsel. I'm sorry to interrupt. I mean, we still have to do even assuming all of that to be the case, you agree that we still have to determine whether it satisfies the statute of frauds, right? Yes, your honor. Okay. So here's the question because what opposing counsel is saying is that, um, even by its terms, this, you could, there's never a necessary end date to this contract. And the reason is because let's say that Ms. Doe wrote a book and, you know, didn't publish it, didn't show it to anyone, but left it in her belongings as part of her will and had it, you know, and with instructions to then, um, breach the violation by having that disclosed at some point in time after her death. And so, and because of that, you can't necessarily say that even if she died within a year, this could be performed within a year. What, what do you say in response to that? Well, I think if that were to happen, it's a classic breach of contract and they could sue the estate because she wasn't supposed to do that under the contract. But, but, but setting that aside, the question we have to answer is why doesn't that, why doesn't that cause a problem under the statute of frauds? In other words, why is it necessarily the case that this can be performed within one year? Well, I think the law under Browning and all the case law is clear that it has to be, the terms, it has to be impossible to, uh, for it to be performed within the year. And that's why I cite that Hayes case, which is a federal Southern district, but they cite, they give an analysis of Florida law and they taught Browning. It is well settled that the oral contracts made unenforceable by the statute because they are to be performed within a year include only those which cannot be performed within that period. And they cite Browning. And then they give examples. I mean, there were a couple cases in there. Uh, I think, uh, well, that case, the terms of the oral contract were for a definite three year term that could not be terminated prior to the expiration of that term. You had those explicit terms. Okay. And then I think they cite the LaRue case and that's where I think LaRue would receive a 25% ownership interest in the company if she worked for the company for three years. So there's definiteness there. Okay. So all these cases, and that's what Browning said, if the terms are indefinite, uh, then you ask, can it be performed, uh, within the year? Is it, is it possible? Is it possible? Is it not impossible? And, and I think that's the trust, uh, can be set up and she, at, okay, when they're making that agreement, okay, she, she can make that, uh, uh, that assurance at that time. That promise, I'm going to keep this confidential. Okay. She's making all that within the year and that's part of the terms of the agreement. So I think that clearly satisfies, uh, that part of the case law. And so what were the but set up a trust at the corpus that generates the 20,000 monthly and pay them a million dollars for the confidentiality and that under the terms, because it doesn't define any date, it, the terms don't, do not define a date. And that's what's determinative here. And that's why it is outside the statute of fraud, your honor. I think that puts it outside and she should be and 38 seconds. And I just wanted to clear up, uh, especially, um, prior judge's question regarding Jeremy Wren. Uh, he was approached because I have in my brief was to be a witness for the Florida litigation, D E 98 one page 38 D E one 61 dash one at paragraph 28 and 29 and D E one 64. And there was a timing about the filing of the initial complaint. Uh, so he was contacted for purposes of being a witness for litigation. So I just wanted to get that to you and with respect to dr writer and he was a witness, direct witness to the terms of the agreement, which were being strung along and misrepresentations throughout these years to, um, to the plaintiff. And I just want you to know, cause this, this bothered me on the summary judgment. Uh, I think, uh, the plaintiffs had wanted to add him as a witness to the witness list. They objected first and then he said, well, they're gonna take that position and then they backed off on it because they didn't want to get that information. Then when they tried to move for sanctions for all sorts of other reasons, uh, he was brought in and we brought him in and he testified. So he testified to that. So I think that's being disingenuous with, with the court. Uh, so we rest on our brief. I do believe no matter what law you apply, florida or new york law, I think statute of frauds does not apply to this specific agreement between the plaintiff and defendant in this case. Thank you. Thank you. Council and the court will be in recess until nine o'clock tomorrow morning.